UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Anthony Cabrera,
    Plaintiff

    v.                                                Civil No. 07-cv-40-SM
                                                          Opinion No. 2008 DNH 015

Ryan LeVierge, individually;
Matthew Poulicakos, individually;
and James M. O'Mara, Jr.,
individually and as Superintendent
of the Hillsborough County
Department of Corrections,
    Defendants


**O R D E R**

Anthony Cabrera, formerly a pre-trial detainee at the Hillsborough County House of Corrections ("HC HOC") has sued in five counts, two of which assert federal constitutional claims brought pursuant to 42 U.S.C. § 1983. Before the court is defendants' motion to dismiss plaintiff's federal claims for failure to meet the exhaustion requirement of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff objects. For the reasons given, defendants' motion is denied.


**The Legal Standard**

While defendants have filed a motion to dismiss, both parties present matters outside the pleadings. Accordingly, defendants' filing shall be treated as a motion for summary

judgment.  See FED. R. CIV. P. 12(d); see also Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion . . . ."); Collins v. Goord, 438 F. Supp. 2d 399, 412 (S.D.N.Y. 2006) ("district courts have converted motions to dismiss to summary judgment without notice to determine exhaustion in PLRA cases where, as here, both parties submitted materials outside the pleadings and it is apparent that the plaintiff will not be taken by surprise by such conversion").

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Torres-Negron v. Merck &

Co., 488 F.3d 34, 39 (1st Cir. 2007) (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

**Background**

Anthony Cabrera entered the Hillsborough County House of Corrections on December 26, 2005, as a pre-trial detainee. He was transferred on January 10, 2006, to the Merrimack County House of Corrections where he remained until early February, when he was transferred to the New Hampshire State Prison, where he currently resides.

In his complaint, Cabrera alleges that on December 26, correctional officers LeVierge and Poulicakos pushed him against the wall of his cell, took him to the floor, beat him, and kicked him, and, in the process, gave him a severe facial cut, broken nose, ruptured eardrum, and other injuries. (Compl. ¶¶ 9-10.) He also alleges that during the course of his incarceration: (1) he was left naked for several days; (2) his cell was kept unusually cold; (3) he lost significant weight because he was deprived of adequate food; and (4) he was not given prescribed medications in a timely manner. (Id. ¶ 14.)

When Cabrera was incarcerated in the HC HOC, inmates there had the benefit of the following grievance procedure:

> If you have a grievance concerning any matter relating
> to your confinement, a grievance procedure is available
> to you.  The first step of the grievance procedure is
> an informal resolution.  You must make a genuine
> attempt to seek an informal resolution of your problem
> with the staff member concerned.  The second step will
> normally be done in the Request Form format.  Fill out
> an Inmate Request Form stating your problem and
> suggested remedy.  Submit the form to your Unit
> Officer.  All request forms will be answered within
> seven (7) working days of receipt.  If you are
> dissatisfied with the response to your Inmate Request
> Form, you may file an Inmate Grievance Form to a
> Captain or his designee, within 48 hours of receipt of
> your Request Form response.  The Captain or his
> designee has fifteen (15) working days from receipt to
> review your grievance and reply.

(Defs.' Add'm/Attach. (document no. 18), at 15.)  As defendants concede, "the only time limitation [in the process described above is] that the inmate [must] file his grievance within 48 hours of a reply to his request form, the second step of the 3 part process."  (Defs.'s Reply, at 7; see also id. at 9.)

During the fifteen days of his incarceration at the HC HOC, Cabrera did not file any grievances, (Defs.' Mot to Dismiss, Ex. 1 (O'Mara Aff.) ¶ 6), although he did file one request form, seeking paper and envelopes (id.).

By letter dated September 28, 2006, Attorney Michael Sheehan submitted an inmate grievance form, on Cabrera's behalf, to Captain David Dionne of the Hillsborough County Department of

4

Corrections ("HC DOC").  (Pl.'s Obj., Ex. 5, at 1.)  The "brief description" section of the grievance form stated: "On December 26, 2006, I was assaulted by Sgt. LeVierge and CO Poulicakos while in my cell on Unit 1A.  This assault was without cause and constituted a violation of my constitutional rights.  I write to ask that you investigate this matter and take appropriate corrective action."  (Id. at 2.)  Shortly thereafter, Carolyn M. Kirby, legal counsel for Hillsborough County, returned the grievance form to Attorney Sheehan, stating in her cover letter:

> Enclosed please find the "grievance" you forwarded to Captain Dionne at the Hillsborough County Department of Corrections on behalf of your client, Anthony Cabrera.
>
> I am returning the grievance to you as it does not conform to the procedure set forth in the HCDOC inmate handbook which, in any event, is no longer available to your client as he is not in the custody of the HCDOC.
>
> In the future, please direct all correspondence to my clients through counsel.

(Id., Ex. 6.)  Attorney Sheehan responded:

> I received your letter of October 10 which "return[ed] the grievance to [me] as it does not conform to the procedure set forth in the HCDOC inmate handbook."  Please advise how the grievance did not adhere to the procedure so I may correct the error.
>
> Despite your opinion that the process "is no longer available to [Mr. Cabrera] as he is not in the custody of the HCDOC," the courts are requiring inmates to exhaust administrative remedies even when common sense circumstances suggest otherwise.  Specifically,

5

>    some courts have required inmates to exhaust remedies
>    in facilities they have left (such as Mr. Cabrera
>    here).
>
>    Therefore, I am obligated to continue to try to
>    properly exhaust HCDOC remedies unless you will
>    stipulate that any HCDOC remedy is no longer
>    "available" to Mr. Cabrera, as that term is defined in
>    the PLRA, and that you will not raise "failure to
>    exhaust" HCDOC internal remedies as a defense to any
>    civil claim he may bring.

(<u>Id.</u>, Ex. 7.)  Attorney Sheehan received no response.  (<u>Id.</u>, Ex. 8 (Sheehan Aff.).)

This action followed.  Count I asserts an excessive force claim based upon the incident that allegedly took place on December 26, while Count V asserts a claim based upon the general conditions of plaintiff's confinement, including allegations concerning such things as lack of clothing, the temperature of his cell, inadequate nutrition, and the failure to provide him with prescription medications in a timely manner.

## Discussion

Defendants move to dismiss,[1] arguing that plaintiff failed to exhaust the administrative remedies available to him.

---

[1] Defendants do not specifically request dismissal with prejudice, but given their adoption of the position stated by Attorney Kirby in her letter to Attorney Sheehan, it seems safe to assume that is what they seek, rather than dismissal without prejudice.

Specifically, they argue that plaintiff did not grieve either the alleged assault or the conditions of his confinement before he was transferred out of the HC HOC and that his attorney's attempt to file a grievance on his behalf, approximately ten months later, was ineffective because: (1) the grievance form that plaintiff's attorney mailed to Capt. Dionne had not been issued to plaintiff by the HC DOC, but was obtained from some other source; (2) the form was submitted by someone other than plaintiff himself; and (3) plaintiff was not an HC HOC inmate at the time the form was submitted.  Stated more simply, defendants' argument is this: plaintiff had administrative remedies available to him while he was incarcerated in the HC HOC, but forfeited those remedies, and his right to seek relief in court, by failing to invoke the HC DOC grievance procedure before he was transferred to another correctional facility.  Defendants' position is not supported by the applicable law.

Under the exhaustion provision of the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  More specifically:

7

> The PLRA does not require the exhaustion of all administrative remedies, but only those that are "available" to the inmate. 42 U.S.C. § 1997e(a). To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." Booth v. Churner, 532 U.S. 731, 738, (2001). . . . "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." Booth, 532 U.S. at 736 n.4.

Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (parallel citations omitted).

In Woodford v. Ngo, the Supreme Court explained "that the PLRA exhaustion requirement requires proper exhaustion." 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386 (footnote omitted). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 127 S. Ct. 910, 921 (2007). Once that defense has been asserted,

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. Abney v. McGinnis, 380 F.3d 663 [(2d Cir. 2004)]. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, Johnson v. Testman, 380 F.3d 691 [2d Cir. 2004)], or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, Ziemba [v. Wezner], 366 F.3d [161,] 163 [(2d Cir. 2004)]. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." Giano v. Goord, 380 F.3d 670 [(2d Cir. 2004)] (citing Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003); Rodriguez order).

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). When a plaintiff making a claim based upon prison conditions fails to exhaust his administrative remedies, without a valid excuse for that failure, the defendant is entitled to dismissal of the unexhausted claims in the complaint. See Medina-Claudio v.

9

Rodríquez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); see also Jones, 127 S. Ct. at 923-26 (rejecting the Sixth Circuit's "total exhaustion" rule which called for dismissal of entire complaint containing exhausted and unexhausted claims).

Here, the undisputed factual record demonstrates that during the fifteen days plaintiff spent in the HC HOC, he did not utilize the HC DOC grievance procedure to seek redress for either the December 26 incident or the general conditions of his confinement. The record also demonstrates that by the time plaintiff's counsel, Attorney Sheehan, attempted to invoke the HC DOC grievance procedure on his behalf – by filing an inmate grievance form with Capt. Dionne – that procedure was no longer available to plaintiff, and had been unavailable since the date of his transfer out of the HC HOC. That is, as the HC DOC construes its own procedures, plaintiff was no longer able to take advantage of those procedures, given his transfer.

It is well established that "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require," Acosta, 445 F.3d at 512 (citation omitted), and that "a prisoner [cannot] satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an

untimely or otherwise procedurally defective administrative grievance or appeal," Woodford, 126 S. Ct. at 2382.

In this case, however, and notwithstanding defendants' reference to plaintiff's "lack of a timely grievance," (Defs.' Mot. to Dismiss, at 10), the grievance was not untimely because the jail's procedures do not impose a time limit. Defendants concede that the HC DOC procedures place no time limit upon the initiation of a grievance.

The question remains, however, whether plaintiff's grievance was procedurally defective for some other reason. If so, and defendants properly rejected it, then plaintiff's claim must be dismissed for failure to exhaust. See Woodford, 126 S. Ct. at 2386-87; Acosta, 445 F.3d at 512. But, if plaintiff's grievance was not procedurally defective, and Attorney Kirby's rejection of it rendered administrative remedies unavailable, then plaintiff is excused from the exhaustion requirement. See Abney, 380 F.3d at 667 ("[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures . . . [and] exhaustion may be excused where prison officials otherwise prevent [an inmate] from seeking his administrative remedies") (citations omitted).

"When determining whether an administrative remedy is available, courts 'should be careful to look at the applicable set of grievance procedures.'"  Abney, 380 F.3d at 668 (quoting Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)).  While defendants' position regarding the procedures for obtaining inmate grievance forms is somewhat difficult to determine,[2] it is undisputed that the HC DOC grievance procedure, as described in the HC DOC inmate handbook: (1) does not require that an inmate use a request form prior to submitting a grievance form; it merely provides that "[t]he second step will normally be done in the Request Form format;" (2) does not place a time limit on the initiation of inmate grievances; (3) does not bar the submission of grievance forms that have not been issued and bates stamped by jail officials; (4) does not bar grievances from inmates who have been transferred or released; and (5) does not bar the submission of a grievance on an inmate's behalf by an authorized agent, like legal counsel.  Thus, nothing in the procedures, as formalized, would seem to prohibit an inmate from filing a grievance after he is transferred or released from the HC HOC.

---

[2] Superintendent O'Mara testified that "[p]er our procedure, an inmate must use a request form in order to obtain a formal grievance form (each of which bears an identifying control number)," (O'Mara Aff. ¶ 4), but in their reply brief, defendants state, without citation to the record, that "request and grievance forms . . . are present and available on every housing unit at the jail," (Defs.' Reply, at 7).

12

The HC DOC grievance procedure does call for inmate grievance forms to be submitted "to a Captain or his designee," and Attorney Sheehan did, in fact, mail plaintiff's grievance to Capt. Dionne.  To be sure, Superintendent O'Mara's affidavit refers to various procedures with which plaintiff did not comply when submitting his grievance form,[3] but because none of those procedures are described in the inmate handbook, or in any other iteration of HC DOC rules and regulations to which plaintiff had actual or constructive access, plaintiff's assertedly defective submission is fundamentally different from the grievance at issue in Woodford (which was submitted after the expiration of a duly promulgated time limit).  Woodford, 126 U.S. at 2382.

---

[3] Specifically, O'Mara described the deficiencies in plaintiff's grievance form in the following way:

> The letter [from Attorney Sheehan] included one of our form grievances.  However, all of our grievances are bates-stamped with control numbers to ensure that we can monitor distribution and return.  Further, the request forms seeking grievance forms will be returned to inmates and will reference the control number.  There is no record in Cabrera's institutional file of his requesting or being provided a grievance form.  Therefore, we are unaware where Attorney Sheehan obtained this form.  Additionally, the form he used seems to show a three-hole punch in the left margin, something that would not be present on the forms we number and provide to inmates.  The timing, manner of submission, Cabrera's absence from our institution and the lack of the control numbers all deviate from our grievance process.

(O'Mara Aff. ¶ 8.)

In other words, unlike the plaintiff in Woodford, who caused administrative remedies to be unavailable, by failing to comply with established procedural rules, id., the most that can be said about Cabrera is that he ran afoul of alleged procedural rules that he had no way of knowing about.  Defendants' reliance upon undisclosed rules to reject plaintiff's grievance form necessarily estops them from relying upon plaintiff's failure to exhaust those remedies as a defense.  On this factual record, it is plain that Cabrera is not the kind of plaintiff that inspired the Second Circuit to explain that "allowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Giano, 380 F.3d at 677-78 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)) (footnote omitted).  The exhaustion requirement is meant to facilitate resolution of disputes at an early stage, in both parties' interest.  Prison facilities are not required to make administrative remedies available, but if they do, then inmates are obliged to pursue them as a condition of bringing suit.  For obvious reasons, however, inmates cannot be expected to meet procedural requirements that are undisclosed, and, where they do fail to meet undisclosed requirements, prison officials will not be heard to complain about failure to exhaust.

**Conclusion**

For the reasons given, defendants' motion to dismiss (document no. 10) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 24, 2008

cc:  Michael J. Sheehan, Esq.
     John A. Curran, Esq.
     Elizabeth L. Hurley, Esq.