UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Anthony Cabrera,
Plaintiff

v.

Civil No. 07-cv-40-SM
Opinion No. 2008 DNH 138

Ryan LeVierge, individually;
Matthew Poulicakos, individually;
and James M. O'Mara, Jr.,
individually and as Superintendent
of the Hillsborough County
Department of Corrections,
Defendants

**O R D E R**

Anthony Cabrera sues in four counts,[1] seeking damages based upon allegations that Sgt. Ryan LeVierge, a correctional officer at the Hillsborough County House of Corrections ("HCHC") unnecessarily punched and kicked him, while he was in handcuffs and leg restraints, and that Hillsborough County Department of Corrections Superintendent James O'Mara negligently supervised and retained Sgt. LeVierge. Before the court is defendants' motion for summary judgment, to which plaintiff objects in part.[2]

---

[1] Count V, a federal claim asserting that plaintiff was subjected to unconstitutional conditions of confinement, was dismissed by order dated February 25, 2008. Accordingly, defendants' motion for summary judgment on Count V is moot.

[2] Plaintiff assents to entry of judgment in favor of defendant Matthew Poulicakos.

For the reasons given, defendants' motion is granted as to Count IV but is otherwise denied.

## The Legal Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To defeat a motion for summary judgment, "the non-moving party 'must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which [he] would bear the ultimate burden of proof at trial.'" Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)). To make that showing, "the non-moving party may not rest merely upon the allegations or denials in its pleading." Torres-Negron, 488 F.3d at 39 (citation omitted). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See id. (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

## Background

Unless otherwise noted, the following facts are undisputed. Anthony Cabrera was a pre-trial detainee at the HCHC from

December 26, 2005, through January 10, 2006. Shortly after Cabrera was booked into the jail, Sgt. LeVierge and Officer Poulicakos escorted him from the booking area to a cell in the medical unit. While Cabrera was in the cell, he was asked to kneel facing the back wall, to facilitate an unclothed contraband search. While facing the wall, he turned his head to address the officers, and LeVierge pushed his head against the wall. When plaintiff subsequently turned his upper body toward the officers, LeVierge took him to the floor and placed him in a prone position. Cabrera alleges that LeVierge punched and kicked him in the head and body while he was wearing handcuffs and leg restraints. Defendants contend that Cabrera was initially unrestrained, that they placed him in restraints only after they took him to the floor, and that they used only enough force to place him in restraints.

After the incident, Cabrera was transported to Elliot Hospital where he was treated. One wound on his face was closed with six stitches. Hospital records disclose the following condition:

> OPEN WOUND OF FOREHEAD - SUPERFICIAL LACERATION
> CONTUSION OF FACE AND JAW
> OPEN WOUND OF NOSE - SUPERFICIAL LACERATION
> LAC[ERATED] EYELID
> SPRAIN OF NECK
> CONTUSION OF CHEST WALL

(Pl.'s Obj. to Summ. J., Ex. 8, at 6.) Cabrera alleges in his complaint that he also suffered a ruptured eardrum and a broken nose. The hospital's records do not support his eardrum claim, and, regarding his nose, contain the notation "Can't rule out a nasal fracture." (Id. at 9.)

Cabrera asserts in this suit that LeVierge is liable for using excessive force against him, in violation of the Fourteenth Amendment (Count I), and for common-law assault (Count II). He further claims that O'Mara is liable for the alleged battery, under the theory of respondeat superior (Count III), and also claims that O'Mara is liable for negligent supervision and negligent retention (Count IV).

## Discussion

Defendants move for summary judgment, arguing that: (1) plaintiff cannot, as a matter of law, prove that he was subjected to excessive force; (2) plaintiff has no evidence of common-law battery; (3) there is nothing to support plaintiff's respondeat superior theory; and (4) there is no evidence that O'Mara negligently supervised or retained Sgt. LeVierge. In addition, LeVierge contends that he is entitled to qualified immunity from plaintiff's excessive force claim. Plaintiff concedes that defendant Poulicakos is entitled to judgment as a matter of law,

but counters that summary judgment in favor of defendants LeVierge and O'Mara is precluded by the existence of genuine issues of material fact.

Count I

In Count I, brought pursuant to 42 U.S.C. § 1983, Cabrera claims that LeVierge violated his rights under the Fourteenth Amendment to the United States Constitution by punching and kicking him while he was wearing handcuffs and leg restraints. Specifically, he alleges that: (1) "LeVierge . . . violently pushed [him] against the wall of the cell, violently put [him] on the floor, [and] continued to beat and kick [him]" (Compl. ¶ 9); (2) the beating resulted in "a severe cut above his right eye and on his nose, a ruptured eardrum and other bruises and injuries," (id. ¶ 10); (3) his behavior did not warrant the beating he received (id. ¶ 11); and (4) LeVierge "acted maliciously and for the very purpose of causing [him] harm" (id. ¶ 12).

LeVierge argues that he is entitled to summary judgment on Count I because: (1) there is no evidence that plaintiff suffered a broken nose or ruptured eardrum; (2) the injuries for which there is evidentiary support - cuts and bruises - are relatively minor, and do not support an excessive-force claim; and (3)

"there is clear evidence that demonstrates that Cabrera's alleged beating never took place."

The evidence to which LeVierge refers consists of an HCHC security videotape that shows LeVierge was in plaintiff's cell for less than ninety seconds and had no blood on his shirt when he exited the cell after the alleged beating. LeVierge argues that the videotape establishes, as a matter of law, that he was not in plaintiff's cell long enough to administer the beating plaintiff alleges, and that the force he did use was not as extreme as plaintiff claims. Plaintiff counters with excerpts from his own deposition, in which he testified that LeVierge repeatedly punched and kicked him in the head and body while he was partially immobilized by handcuffs and leg restraints.

"A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests . . . [which] are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (citing Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002)). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force

against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). More specifically, "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson, 503 U.S. at 5 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

"In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria." Surprenant, 424 F.3d at 18 (citing Farmer, 511 U.S. at 834)). "[C]ourts considering a prisoner's claim must ask both if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). While "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," Hudson, 503 U.S. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), "[w]hen prison officials maliciously and

sadistically use force to cause harm, contemporary standards of decency always are violated," id.

Regarding the subjective element, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain." Hudson, 503 U.S. at 5 (citation omitted). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.

Plaintiff has offered sufficient evidence to avoid LeVierge's motion for summary judgment on Count I. Whether plaintiff was wearing handcuffs and leg restraints at the time of the alleged beating is genuinely disputed. Each party has produced evidence from which a reasonable jury could find that fact in his favor. See Cordi-Allen v. Conlon, 494 F.3d 245, 249 (1st Cir. 2007) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)) ("An issue is genuine if, on the evidence presented, it 'may reasonably be resolved in favor of either party.'"). And, the fact is material. See Brown v. Latin Am. Music Co., 498 F.3d 18, 22 (1st Cir. 2007) (citing Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003)) ("a fact is

material if it would affect the outcome of the case"). Whether plaintiff was restricted by handcuffs and leg restraints at the time of the alleged beating is a fact that would have a substantial bearing on the context-sensitive determination of whether the force used was applied in a good-faith effort to maintain or restore discipline, or was intended maliciously and sadistically to cause harm. Thus, plaintiff has shown that a genuine issue of material fact exists.

Turning to the severity of plaintiff's injuries, plaintiff appears to concede that he did not suffer a broken nose or ruptured eardrum - he has offered no evidence to support those claims. With regard to the injuries documented in hospital records, plaintiff has met his burden. The court recognizes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's rights." Johnson, 481 F.2d at 1033. Even so, the court declines to rule that three facial lacerations (one requiring six stitches), contusions to the face, jaw, and chest, two black eyes,[3] and a neck sprain, inflicted on a prisoner allegedly immobilized by hand and leg restraints, are of such a minor character that their deliberate and unnecessary infliction did

[3] Plaintiff's black eyes are documented by three photographs, taken shortly after his treatment at Elliot Hospital. (Pl.'s Obj. to Summ. J., Exs. 4-6).

not, as a matter of law, violate plaintiff's constitutional right to be free from cruel and unusual punishment.

**Qualified Immunity**

LeVierge also raises the defense of qualified immunity. Plaintiff does not address the qualified immunity issue in his objection to summary judgment. In his reply, LeVierge argues that plaintiff's failure to address qualified immunity entitles him to summary judgment on that issue. In a surreply, as in his objection, plaintiff does not address qualified immunity.

The analytical framework for assessing a claim of qualified immunity involves three separate inquiries:

> (I) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

DeMayo v. Nugent, 517 F.3d 11, 17 (1st Cir. 2008) (quoting Burke v. Town of Walpole, 405 F.3d 66, 77 (1st Cir. 2005)).

LeVierge correctly notes that "[w]hen a defendant moves for summary judgment on the basis of qualified immunity, it is the plaintiff's burden to demonstrate the infringement of a federally

assured right [and that] [i]f [he] fails to do so, the movant prevails." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992) (citing Castro-Aponte v. Ligia-Rubero, 953 F.2d 1429, 1430 (1st Cir. 1992)); see also Vélez-Díaz v. Vega-Irizarry, 421 F.3d 71, 81 (1st Cir. 2005) (referring to plaintiff's "burden under the threshold inquiry for qualified immunity").[4]

While plaintiff has not directly addressed LeVierge's assertion of a qualified immunity defense, he has, nonetheless, met his burden of demonstrating the infringement of a federally assured right. Often, that burden is met by the allegations in the complaint. See Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 61 (1st Cir. 2004). But where, as here, qualified immunity is raised in a motion for summary judgment, "courts addressing the first prong . . . should look beyond the complaint to the broader summary judgment record." Id. at 62 (citing Groh v. Ramirez, 540 U.S. 551, 562 (2004); Hope v. Pelzer, 536 U.S. 730, 734 n.1 (2002)).

[4] The court of appeals for this circuit has explained that "[q]ualified immunity is an affirmative defense, and thus the burden of proof is on defendants." DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Gómez v. Toledo, 446 U.S. 635, 639 (1980)).

The summary judgment record includes plaintiff's deposition testimony that he was punched and kicked more than a dozen times after having been thrown to the floor while immobilized by handcuffs and leg restraints. (Pl.'s Obj. to Summ. J. (Cabrera Dep.) at 163-64.) That is sufficient to satisfy his burden of demonstrating the infringement of a federally assured right. Nothing more is necessary to overcome LeVierge's argument that plaintiff has not established the first prong of the qualified immunity test, especially given defendant's failure to direct his argument to the full summary judgment record. See Groh, 540 U.S. at 562 (noting court's obligation to credit nonmovant's account of the facts when deciding qualified immunity at the summary judgment stage).

Turning to the second prong of the qualified immunity test, and applying that test to plaintiff's version of the disputed facts, see Groh, 540 U.S. at 562, it is plain that a prisoner's constitutional right not to be kicked and punched while shackled was clearly established at the time. See Hudson, 503 U.S. at 4 (holding that prisoner's Eighth Amendment rights were violated when he was kicked and punched while shackled, even though his injuries required no medical attention). And, regarding the third prong of the test, an objectively reasonable correctional officer, in LeVierge's position, would have understood that

repeatedly punching and kicking a shackled inmate who posed no physical threat would violate the inmate's clearly established constitutional right not to be subjected to cruel and unusual punishment.

For the reasons given, defendants' motion for summary judgment is denied as to Count I.

<u>Count II</u>

In Count II, plaintiff asserts that by beating him, LeVierge "committed the common law tort of assault, or unprivileged physical contact." In his motion for summary judgment, LeVierge recharacterizes Count II as asserting a claim of battery, and argues that: (1) "the video evidence shows that Cabrera's version of the events simply did not take place"; and (2) plaintiff "admits to engaging in conduct that a reasonable officer would and legally can meet with force," thus making LeVierge's physical contact with plaintiff privileged.

The security videotape upon which LeVierge relies was recorded by a camera that had a clear view of the area outside plaintiff's cell, but only a partial view into the cell. Defendant's argument is not that the tape shows what happened to plaintiff in the cell, but, rather, that the beating plaintiff

claims to have received "could not" have taken place during the one minute and twenty-four seconds that LeVierge and plaintiff were out of the camera's view. That, of course, is a fact question for the jury, as it cannot be said, as a matter of law, that the beating as alleged "could not" have been inflicted in one minute and twenty-four seconds.

Defendant's second argument is also overstated. While he argues that plaintiff admitted to conduct that a correctional officer could reasonably meet with the amount of force Sgt. LeVierge used, plaintiff actually admitted much less. He testified that while facing the wall of his cell, in handcuffs and leg restraints, he: (1) turned his head toward LeVierge and spoke to him using sarcasm and profanity, which prompted LeVierge to slam his head against the wall (Cabrera Dep. at 156-60); and (2) turned his upper body toward LeVierge, who then took him to the ground and repeatedly punched and kicked him in the head and face (id. at 162-63). As with plaintiff's excessive force claim, it cannot be said, as a matter of law, that plaintiff's conduct, while immobilized by handcuffs and leg restraints, warranted application of force to a degree that resulted in the injuries demonstrated by the undisputed factual record. A reasonable jury could credit plaintiff's version of events and could readily find that the force used was not necessary for any legitimate

penalogical or security purpose, and, indeed, was applied for the purpose of inflicting harm and pain as punishment. Accordingly, defendants' motion for summary judgment is denied as to Count II.

Count III

In Count III, plaintiff asserts that O'Mara is liable for the assault alleged in Count II, under the doctrine of respondeat superior. In reliance upon Daigle v. City of Portsmouth, 129 N.H. 561 (1987), O'Mara argues that he is entitled to summary judgment on Count III because plaintiff has no evidence that he, O'Mara, knew about or acquiesced in the conduct of the other defendants, and no evidence that those other defendants had ever been found to have used unlawful force on any inmate in the past. O'Mara's argument is unavailing.

"Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff.'" Porter v. City of Manchester, 155 N.H. 149, 152 (2007) (quoting Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004)); see also Daigle, 129 N.H. at 579. "[C]onduct falls within the scope of . . . employment if: (1) it is of the kind [the employee] is employed to perform; (2) it occurs substantially within the authorized

time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Porter, 155 N.H. at 152. As noted in Aversa v. U.S., 99 F.3d 1200, 1209 (1st Cir. 1996), an intentional tort, like assault, can be within the scope of employment under applicable state law if the employee acts within his authority during the course of employment, even though he acts intentionally and maliciously. And Porter, supra, makes clear that under New Hampshire's common law, an employer may be held liable even for the intentional torts of its employees under the doctrine of respondeat superior.

While the Daigle court noted that evidence that a police officer "had frequently beaten suspects" could allow a jury reasonably to "infer that [the officer] believed it was appropriate to rough [suspects] up in the course of serving the law enforcement objectives of capturing the guilty and establishing their guilt," 129 N.H. at 580-81, Daigle does not suggest that such evidence is required to prove that a police officer's action was undertaken to serve his employer and, thus, within the scope of his employment.

Because the undisputed factual record does not require a conclusion, as a matter of law, that LeVierge was acting beyond

the scope of his employment when he allegedly beat plaintiff, O'Mara is not entitled to summary judgment on Count III.

Count IV

Plaintiff claims that O'Mara is liable for negligent supervision and negligent retention of LeVierge because he "fail[ed] to properly investigate allegations of misconduct [by LeVierge] and . . . fail[ed] to appropriately discipline [LeVierge] for those prior instances of misconduct." (Compl. ¶ 33). O'Mara argues that he is entitled to summary judgment on Count IV because there is no evidence that he negligently supervised or negligently retained LeVierge. More specifically, O'Mara contends that LeVierge has never been found to be dangerous or incompetent and that there has been no occasion for him to learn of any alleged violent tendencies on LeVierge's part. O'Mara also claims discretionary function immunity. Plaintiff counters that allegations of excessive force have been made against LeVierge in at least five other cases in this court.

New Hampshire recognizes "a cause of action against an employer for negligently hiring or retaining an employee that the employer knew or should have known was unfit for the job so as to create a danger of harm to third persons." Marquay v. Eno, 139 N.H. 708, 718 (1995) (citing Cutter v. Town of Farmington, 126

N.H. 836, 840-41 (1985); LaBonte v. Nat'l Gypsum Co., 113 N.H. 678, 681 (1973)). "In Cutter, [the New Hampshire Supreme Court] cited RESTATEMENT (SECOND) OF AGENCY § 213 (1958), which provides that '[a] person conducting an activity through servants or agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons.'" Marquay, 139 N.H. at 718.

In plaintiff's view, it was negligent or reckless for O'Mara not to investigate LeVierge and to allow him to continue working in direct contact with detainees in light of both LeVierge's "history of assaulting inmates," as demonstrated by the allegations against LeVierge in the lawsuits in which he and O'Mara were or are co-defendants, and two comments made by O'Mara to the father of another HCHC inmate. O'Mara is alleged to have told inmate Marc Dixon's father: "I would be a damned fool to believe my staff are angels, but you have to prove it," (Pl.'s Obj. to Summ. J., Ex. 3 (Dixon Aff.) ¶ 5) and: "I will deny this conversation ever occurred," (id. ¶ 6). Even if true, those statements are not material to the issue of O'Mara's knowledge of LeVierge's alleged violent tendencies. See Brown, 498 F.3d at 22 (defining materiality).

Similarly immaterial are the allegations other inmates have made against LeVierge in other lawsuits, which demonstrate only a history of inmate accusations, hardly an unusual circumstance. But those mere allegations do not create a triable issue of material fact regarding LeVierge's "history of assaulting inmates." As O'Mara points out, none of the various allegations against LeVierge has resulted in any sort of judicial or administrative determination that he did, in fact, assault any HCHC inmates. The mere fact that LeVierge has been accused by inmates of using excessive force in complaints filed in this court does not establish a basis upon which O'Mara could be held liable for negligently retaining LeVierge.

Plaintiff has offered no evidence from which a reasonable jury could conclude that O'Mara negligently or recklessly retained LeVierge, that is, that O'Mara knew or should have known that LeVierge was unfit for his job in a way that posed a danger of harm to third parties. See Marquay, 139 N.H. at 718. Accordingly, O'Mara is entitled to summary judgment on Count IV.

**Conclusion**

For the reasons given, defendants' motion for summary judgment (document no. 20) is granted as to Count IV and to the extent that the claims against defendant Poulicakos in Counts I

and II are dismissed, but the motion is otherwise denied. The case remains on track for trial on Counts I and II, against LeVierge only, and Count III.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

August 6, 2008

cc: Michael J. Sheehan, Esq.
John A. Curran, Esq.
Elizabeth L. Hurley, Esq.